**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| L.M., BY AND THROUGH HER GUARDIAN AD LITEM, JUAN MIRANDA, <br><br>           Plaintiff, <br>      v. <br><br> UNITED STATEES OF AMERICA, <br><br>           Defendant. | Case No. 1:25-cv-00500-JLT-SKO <br><br> ORDER GRANTING DEFENDANT'S MOTION TO DISMISS <br><br> (Doc. 16.) |

L.M. is an infant born to her mother Yuritzy Chavez. She brings the instant action by and through her guardian ad litem, Juan Miranda, her father. (*See generally* Doc. 14.)[1] L.M. alleges that she was born with permanent disability due to negligent medical care rendered to her mother. (Doc. 14 at ¶¶ 22–31.) Because some of the doctors responsible for her mother's care—namely, Dr. Katherine Overton and Dr. Charles Taksa—are deemed federal employees acting within their scope of employment, Plaintiff dismissed the state court action against the pair of doctors and refiled the instant action in this Court, naming the United States as sole Defendant, in order to comply with the Federal Tort Claims Act. (*See generally* Doc. 20 at 5–6; Doc. 16-1 at 1–3.) For the reasons set forth below, the Court **GRANTS** Defendant's motions to dismiss.

## I.    INTRODUCTION

### A.  Factual Background

L.M.'s mother, Yuritzy Chavez, received pre-natal medical care from Dr. Katherine

---

[1] As Defendant points out, L.M.'s mother—Yuritzy Chavez—was initially named as a plaintiff but was then removed from the action. (Doc. 16-1 at 2.) The Court will refer to L.M. as the sole plaintiff, singular, for consistency and clarity.

1

Overton and Dr. Charles Taksa. "On or about March 27, 2023, Ms. Chavez went to have her blood glucose checked as Dr. Overton and/or Dr. Taksa had asked to monitor her blood glucose every two weeks." (Doc. 14 at ¶ 22.) During this visit, it was discovered that the heart rates of Ms. Chavez and L.M. "dropped to dangerously low levels, indicating Ms. Chavez should have been admitted in order to monitor both her health and the health of her fetus." (*Id*. at ¶ 23.) Yet, the Doctors sent Ms. Chavez home. (*Id*. at ¶ 24.) Plaintiff alleges that the pair of doctors "failed to inform Ms. Chavez of these risk factors, failed to inform her of the increased risk of an injury to her newborn during delivery, failed to timely commence labor and delivery; failed to timely admit Ms. Chavez given the condition of her fetus, and failed to offer a c-section to avoid risk and injury to her baby and herself." (*Id*. at ¶ 25.)

The next day, Ms. Chavez was admitted to Adventist Health in Hanford for labor and vaginal delivery, under the care of Doctors Overton and Taksa. (Doc. 14 at ¶¶ 26–27.) L.M. was born without vital signs. (*Id*. at ¶ 28.) Though medical personnel were able to resuscitate L.M., she suffered permanent disability and now requires specialized medical care. (*Id*. at ¶¶ 28–29.) Plaintiff alleges that it was the doctors' negligent failure to provide medical care, as well as Adventist Health's negligent failure to properly assist in the delivery, which caused or contributed to Plaintiff's injuries. (*Id*. at ¶¶ 30–31.)

### B. Procedural History

On September 29, 2023, L.M. and Ms. Chavez filed an action in state court against Adventist Health, Doctor Overton, Doctor Taksa, and Doctor Enloe, Jr. (Doc. 20 at 5.) On January 10, 2024, the U.S. Attorney's Office filed a notice indicating that Doctors Overton and Taksa may be deemed federal employees, which was confirmed on June 21, 2024. (*Id*. at 5–6.)

The state court case was voluntarily dismissed on July 15, 2024 with respect to Doctors Overton and Taksa. (Doc. 16-1 at 2; Doc. 16-4 at 19.) Plaintiff contends that a Claim Form (here, a Standard Form 95) was mailed to the Department of Health and Human Services on July 22, 2024, (Doc. 20 at 6-7), but Defendant claims that no administrative claim was received by the March 28, 2025 deadline, (Doc. 16-1 at 2). Plaintiff alleges that there was no response from HHS, nor was the claim form returned as undelivered. (Doc. 20 at 7.)

2

Plaintiff filed the instant action on April 29, 2025, and then filed the First Amended Complaint on August 6, 2025. (Docs. 1, 14.) On August 19, 2025, the United States filed a motion to dismiss for lack of jurisdiction and for failure to state a claim upon which relief can be granted. (Doc. 16.)[2] The matter is fully briefed and ripe for review. (Pl.'s Opp'n, Doc. 20; Def.'s Reply, Doc. 21.) As indicated, (Doc. 19), the Court took the matter under submission without oral argument.

## II.    PRELIMINARY MATTERS

### A.  Legal Standards

To establish subject matter jurisdiction in an action against the United States, there must be: (1) "statutory authority vesting a district court with subject matter jurisdiction;" and (2) "a waiver of sovereign immunity." *Alvarado v. Table Mountain Rancheria*, 509 F.3d 1008, 1016 (9th Cir. 2007). The party asserting subject matter jurisdiction has the burden of establishing its existence. *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A federal court is presumed to lack subject matter jurisdiction until [a] plaintiff establishes otherwise." *Harborview Fellowship v. Inslee*, 521 F. Supp. 3d 1040, 1046 (W. D. Wash. 2021).

Under Fed. R. Civ. P. 12(b)(1), a defendant may challenge the plaintiff's jurisdictional allegations in one of two ways. First, a factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings. When the defendant raises a factual attack, the plaintiff must support the jurisdictional allegations with 'competent proof,' under the same evidentiary standard that governs in the summary judgment context. The plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) (citations omitted). This Court may also "resolve those *factual disputes* itself." *Id*. at 1121–22 (citations omitted) (emphasis added). Second, a defendant's "facial" attack "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal

---

[2] For reasons explained in detail below, the question of equitable tolling is not a jurisdictional issue; therefore, the Court construes that question as a Rule 12(b)(6) issue rather than a Rule 12(b)(1) issue.

jurisdiction.'" *Id*. at 1121 (quoting *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004)). In such a scenario, the Court resolves the defendant's facial attack in a manner akin to "a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor," without considering any party submissions outside of the complaint. *Leite*, 749 F.3d at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir.2013)).

Moreover, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility inquiry is a "context-specific task that requires [this Court] to draw on its judicial experience and common sense," *id*. at 679, and "'draw all reasonable inferences in favor of the nonmoving party[,]'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (quoting *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014)). "Conclusory allegations and unreasonable inferences," however, "do not provide [] a basis" for determining whether a plaintiff has plausibly stated a claim for relief. *Coronavirus Reporter v. Apple, Inc.*, 85 F.4th 948, 954 (9th Cir. 2023) (citation omitted).

**B.  Evidentiary Disputes**

"The sham affidavit rule prevents a party from 'creat[ing] an issue of fact by an affidavit contradicting his prior deposition testimony.' The Court must make a factual finding that (1) the contradiction is a 'sham;' and the (2) 'inconsistency between a party's deposition testimony and subsequent [declaration] . . . is clear and unambiguous.'" *Lincoln Nat'l Life Ins. Co. v. McClendon*, 230 F. Supp. 3d 1180, 1187 (C.D. Cal. 2017) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)) (alterations in original). With respect to the second element, "minor inconsistencies that result from an honest discrepancy, a mistake, or newly discovered evidence afford no basis for excluding an opposition affidavit." *See Messick v. Horizon Indus.,* 62 F.3d 1227, 1231 (9th Cir. 1995).

4

The potentially outcome-determinative evidentiary dispute centers around alleged inconsistencies between the two declarations proffered by Ms. Torres. In her first declaration, she states, among other things:

> 3. The Department maintains an internal database that contains a listing of most claims filed against the Department for damage, injury, or death. This database contains information regarding the claim, including the date the claim was received.
>
> 4. I conducted a search of all Department records of administrative tort claims submitted for adjudication for evidence of an administrative claim (i.e., a form SF-95) filed by or on behalf of Lilah Miranda, a minor, including by and through her Guardian Ad Litem, or on behalf of Yuritzy Chavez, the above-named plaintiffs. No such claim(s) was discovered.

(Doc. 11-2 at 1–2.) She then submitted a second declaration stating, inter alia:

> 3. The Department has a Claims Office that maintains in a computerized database a record of administrative tort claims filed with the Department, including those filed with respect to federally supported health centers or their employees that have been deemed eligible for Federal Tort Claims Act malpractice coverage. If a tort claim had been filed with the Department with respect to Katherine Overton, M.D., Thomas Enloe, M.D., Plaintiff L.M. Miranda or Yuritzy Chavez, a record of that filing would be maintained in the Claims Office's database.
>
> 4. I conducted a search of all Department records of administrative tort claims submitted for adjudication for evidence of an administrative claim (*i.e.*, a form SF-95) filed by or on behalf of L.M., a minor, including by and through her Guardian Ad Litem, Juan Miranda, or her attorneys (Koorosh Shahrokh and National Choice Lawyers), or her mom, Yuritzy Chavez. I searched the actual name of the minor but am using only the initials herein to comply with the court's local rules. No such claim(s) was discovered. There is no record of an administrative tort claim filed by or on behalf of the Plaintiff.

(Doc. 16-2 at 2.)

Plaintiff argues that Ms. Torres' declarations are so inconsistent that they should be stricken pursuant to the sham affidavit rule. Plaintiff contends that Ms. Torres claimed in her first declaration that HHS's database includes most claims filed and then claimed in her second declaration that the database contains all claims filed. (Doc. 20 at 11–13.) A part of Defendant's response is reproduced below:

> The first declaration generally stated what was in the database

whereas the second declaration specifically addressed the fact that FTCA claims submitted against federally supported health centers deemed eligible for FTCA coverage would be in the database. The second declaration specifically stated that "[i]f a tort claim has been filed with the Department with respect to" Drs. Overton or Enloe, Plaintiff or her guardian it would be maintained in the database. The first declaration did not name the doctors. The decision to include more specific information about federally funded clinics and the specific doctors involved does not make the second declaration a "sham."

(Doc. 21 at 7.)

The Court finds that Defendant's response provides several plausible explanations for the purported discrepancies between Ms. Torres' first and second declarations, which preclude findings of "clear and unambiguous" inconsistency. First, Plaintiff concedes that it is not clear what claims are excluded from HHS's database, (Doc. 20 at 10); therefore, it is quite plausible that the type of claim at issue here—i.e., claims "filed with respect to federally supported health centers or their employees that have been deemed eligible for [FTCA] malpractice coverage"—is included in the database. If so, the second declaration (stating that if a tort claim had been filed with respect to Doctor Overton, Doctor Enloe, Plaintiff L.M., or Plaintiff Chavez, a record of that filing would have shown up in HHS's database) may be reconcilable with the first declaration (stating that HHS's database "contains a listing of most claims filed"). Second, contrary to Plaintiff's contention, the second declaration does not explicitly and unambiguously state that "all claims" are included in HHS's database. Accordingly, the Court finds no unambiguous, irreconcilable inconsistency between the two declarations.

The Court also struggles to find any indicia of "sham" declaration beyond Plaintiff's subjective speculation that the second declaration was merely intended to "bolster" an allegedly "insufficient" earlier declaration. (*See* Doc. 20 at 12.) As Defendant points out, Ms. Torres has submitted similar declarations in the past, (Doc. 21 at 7), a fact which tilts against a finding of "sham" declaration in this action. For example, in *Besson v. United States*, Ms. Torres proffered a declaration stating, among other things:

2. The Department has a Claims Office that maintains in a computerized database a record of administrative tort claims filed with the Department, including those filed with respect to federally

6

supported health centers that have been deemed to be eligible for Federal Tort Claims Act malpractice coverage.

3. As a consequence, if an administrative tort claim had been filed with the Department with respect to Family Healthcare Network, its approved delivery sites, or its employees or qualified contractors, a record of that filing would be maintained in the Claims Office's database.

No. 1:23-CV-01701-HBK, 2024 WL 1312026 (E.D. Cal. Mar. 26, 2024), Doc. 10-2 at 1. This is

remarkably similar to parts of the second declaration by Ms. Torres:

3. The Department has a Claims Office that maintains in a computerized database a record of administrative tort claims filed with the Department, including those filed with respect to federally supported health centers or their employees that have been deemed eligible for Federal Tort Claims Act malpractice coverage. If a tort claim had been filed with the Department with respect to Katherine Overton, M.D., Thomas Enloe, M.D., Plaintiff L.M. Miranda or Yuritzy Chavez, a record of that filing would be maintained in the Claims Office's database.

(Doc. 16-2 at 2.)

At bottom, the alleged inconsistencies between Ms. Torres' first and second declarations are nowhere sufficient to strike her declarations under the "evidentiary standard that governs in the summary judgment context." *See Leite*, 749 F.3d at 1121. The alleged inconsistencies are not enough to render Ms. Torres' declarations wholly inadmissible.

Finally, the Court finds it unnecessary to address Plaintiff's objections to Ms. Taylor's declaration, (Doc. 20 at 8–10), for the admissibility of that declaration is not critical to the resolution of the pending motion to dismiss.

## III.    THE FEDERAL TORT CLAIMS ACT

The Federal Tort Claims Act "waives the sovereign immunity of the United States for certain torts committed by federal employees under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Vacek v. U.S. Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006); 28 U.S.C. § 1346(b). However, it is well established that no action may be instituted under the FTCA unless the claimant first presented his claim to the appropriate federal agency and, either the claim was finally denied by the agency in writing and sent by certified or registered mail, or the

7

agency failed to make final disposition of the claim within six months of its filing. *See* 28 U.S.C. § 2675(a). "A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). Moreover, it is important to emphasize that presentment (whether the agency received Plaintiff's claim) and timeliness (whether the date of receipt is within the statute of limitation) are two separate requirements; and that, within the Ninth Circuit, the former is jurisdictional while the latter is not. *See Bhatnagar v. United States*, No. 14-CV-00327-MEJ, 2015 WL 4760386, at *5 (N.D. Cal. Aug. 12, 2015)); *see also Rosario v. Brennan*, 197 F. Supp. 3d 406, 411 (D. Conn. 2016) ("'The FTCA has both an administrative exhaustion requirement, set forth in 28 U.S.C. § 2675(a)'—at issue here—'and a statute of limitations, set forth in 28 U.S.C. § 2401(b)'—at issue in *Wong*." (quoting *Bhatnagar*, 2015 WL 4760386, at *5)).[3]

The instant motion centers around Defendant's contentions that Plaintiff has not satisfied the administrative exhaustion requirement under 28 U.S.C. § 2675(a) by presenting a claim for damages to the relevant agency (here, HHS), and that Plaintiff is not entitled to equitable tolling of the statute of limitation, set forth in 28 U.S.C. § 2401(b). The Court first considers the United States' factual attack on the administrative exhaustion (i.e., claim presentation) requirement and then, if necessary, turns to the question of equitable tolling.

### A. Section 2675(a)

It is well-established that Plaintiff bears the burden of showing that she has "met the presentment requirement, which shall be strictly construed in favor of the United States." *Keegan v. United States*, No. C24-0656-KKE, 2025 WL 437924, at *3 (W.D. Wash. Feb. 7, 2025) (citing *Brady v. United States*, 211 F.3d 499, 502 (9th Cir. 2000)); *see Prescott v. United States*, 973 F.2d 696, 701 (9th Cir. 1992) ("[P]laintiff bears the burden of persuading the court that it has subject matter jurisdiction under the FTCA's general waiver of immunity."). "It is not enough for

---

[3] Plaintiff argues that *United States v. Wong*, 575 U.S. 402 (2015), "clarified that 28 U.S.C. § 2401(b) is non-jurisdictional and subject to equitable tolling." (Doc. 20 at 18.) While that is an accurate summary of *Wong*'s holding, nothing in that opinion alters the analysis under § 2675(a). Tellingly, the Ninth Circuit reiterated, even after *Wong*, that "FTCA's exhaustion requirement is jurisdictional and may not be waived." *D.L. by & through Junio v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2017) (citing *Jerves v. United States*, 966 F.2d 517, 519 (9th Cir. 1992)).

a plaintiff to merely allege that they mailed the claim form, as no 'mailbox rule' or presumption of receipt applies to the federal government in this Circuit. Rather, the burden is on the Plaintiff to show that the agency received the claim. *Keegan*, 2025 WL 437924, at *3 (quoting *Vacek*, 447 F.3d at 1252).

       1.  Relevant Cases

Before turning to the instant action, the Court finds it helpful to provide a summary of potentially analogous cases. To begin with, this Court has recently decided a substantially similar case, which also addressed FTCA exhaustion:

> Defendant contends Plaintiff failed to exhaust her administrative remedies because "USPS has no record of any administrative tort claim filed by [Plaintiff]." And because Plaintiff cannot show her claim was received by USPS, Defendant maintains Plaintiff's Complaint must be dismissed for lack of subject matter jurisdiction. In opposition, Plaintiff argues she exhausted her administrative remedies by serving a federal tort claim upon USPS's Chief Counsel, and when USPS did not respond, the claim was deemed denied. To support her position that USPS received her claim, Plaintiff includes several declarations from her legal counsel — detailing the steps taken to mail the claim — and an incomplete USPS certified mail return receipt. The parties dispute the legal effect of the incomplete return receipt.

> The Court finds Plaintiff failed to demonstrate she exhausted her administrative remedies, and therefore, the Court lacks subject matter jurisdiction over her claim. As noted above, a plaintiff must exhaust their administrative remedies as a jurisdictional prerequisite to filing suit in federal court. To exhaust her administrative remedies, Plaintiff must have presented her claim to USPS. Plaintiff contends she presented her claim by mailing it to USPS via certified U.S. mail. However, Defendant has no record of an administrative tort claim filed by Plaintiff. Plaintiff's argument that she presented her claim, notwithstanding Defendant having no record of its receipt, primarily hinges upon the incomplete return receipt purportedly issued by USPS. But without a complete return receipt, or other evidence tending to show her claim was received by USPS, the Court is unable to determine whether Plaintiff's claim was properly presented to USPS consistent with 28 C.F.R. § 14.2. And Plaintiff offers no legal authority to support her contention that the evidence she has proffered thus far, including the incomplete return receipt, is sufficient to confer jurisdiction upon the Court.

*Banks v. United States*, No. 2:23-CV-01594-TLN-DB, 2024 WL 3509301, at *2–3 (E.D. Cal. July 23, 2024) (internal citations and footnotes omitted) (alteration in original).

Similarly, in *Williams v. Jewel*, the plaintiffs presented the district court "with the form

they allegedly sent to the agency . . . as evidence that the claim was properly presented. However, [they did] not present[] any evidence that the form was actually received (such as a certified mail receipt)." No. CV 14-75-M-DWM, 2014 WL 12597825, at *3 (D. Mont. Nov. 12, 2014), *aff'd sub nom. Williams v. Zinke*, 683 F. App'x 653 (9th Cir. 2017). The district court explained that "[i]n the absence of such evidence, mailing a letter alone is insufficient to meet the requirement of showing that a claim has been 'presented.'" *Id*. (citing *Bailey v. United States,* 642 F.2d 344, 347 (9th Cir. 1981); *Vacek v. U.S. Postal Serv.,* 447 F.3d 1248, 1251–53 (9th Cir. 2006)).

Likewise, in *Estes v. United States*, the Ninth Circuit rejected the plaintiff's contention that the Court "should treat evidence that her claim was mailed on June 1, 2004, as sufficient evidence that it was received by the agency, despite the lack of evidence of such receipt in the agency's records." 302 F. App'x 563, 565 (9th Cir. 2008). The Ninth Circuit explained that an "attorney's declaration and proof of service form" do not "provide[] any direct evidence that the claim was *received* by the agency, only that it was mailed." *Id*. (emphasis in original). Indeed, the Ninth Circuit noted that "in *Bailey,* the government conceded for purposes of the appeal that the claim had been mailed, but this was considered insufficient to establish that the claim had been received where the agency asserted that it had no record of the claim. *Id*. (citing 642 F.2d at 346–47).

Moreover, here, as in *Vacek* and *Bailey*, "there was a long series of communications between plaintiff's counsel and the administrative agency," plaintiff's "counsel did not send the form by certified mail" and "did nothing to verify that the claim had been received," and "the government provided affidavits attesting that the claim was never received." *Vacek*, 447 F.3d at 1252.

### 2. Plaintiff's Contentions

Though the Court finds no meaningful way to distinguish the present case from the foregoing cases, the Court has considered Plaintiff's arguments but finds none to be persuasive.

Plaintiff first argues that dismissal is improper because evidence shows that the Claim Form was sent. (Doc. 20 at 14.) That may be so, but such evidence does not necessarily address the question of whether the Claim Form was received by the agency. "Indeed, in *Bailey,* the

government conceded for purposes of the appeal that the claim had been mailed, but this was considered insufficient to establish that the claim had been received where the agency asserted that it had no record of the claim." *Estes*, 302 F. App'x at 565 (citing *Bailey,* 642 F.2d at 346–47)).

Second, Plaintiff refers to the concurrence in *Vacek* for the proposition that "the mere affidavit claiming non-receipt is insufficient to rebut the presumption of receipt[;]" rather, the receiving party must provide (1) a detailed description of "procedures for receiving, sorting, and distributing mail," (2) evidence that these "procedures were properly followed" during the relevant period, and (3) confirmation of "a thorough search for the document" at the recipient's facility. (Doc. 20 at 14.) That, however, is an inappropriate distortion of how Judge Thomas's concurrence reads. Rather, Judge Thomas quoted those three factors from *Schikore v. BankAmerica Supplemental Ret. Plan*, 269 F.3d 956, 964 (9th Cir. 2001); and he explicitly noted that the majority opinion applied the *Bailey* rule and not the *Schikore* rule, which he agreed "command opposite results." *Vacek*, 447 F.3d at 1256 (Thomas, J., concurring). He further "agree[d] that *Bailey* control[led]" the outcome in *Vacek. Id*. at 1257. Finally, Judge Thomas explained that he would prefer to "overrule *Bailey*" but nonetheless concurred in the judgment. *Id*. In short, neither the majority nor the concurrence applied the three factors from *Schikore*.

Third, Plaintiff argues that because the Claim Form was not returned undelivered, the Court should presume that the Claim Form was indeed received by the agency. (Doc. 20 at 14–15.) Plaintiff's argument, however, is based on California state law—and it has been clearly established that federal law controls the procedural aspects of an FTCA claim. *Bennett v. United States*, 44 F.4th 929, 933 (9th Cir. 2022) ("[A]ll agree that [the plaintiff] complied with the procedural and timing requirements specified in the FTCA, and that those requirements apply in lieu of any Washington state law statute of limitations that might otherwise apply."). Many federal cases have expressly rejected the notion that lack of return receipt supports a conclusion of actual receipt by the agency. *See, e.g.*, *Bhatnagar*, 2015 WL 4760386, at *8 (holding that plaintiff's allegation that he sent a tort claim via certified mail, absent a signed return receipt, was "insufficient to establish that the claim had been received where the agency asserted that it had no

11

record of the claim" (citation omitted)); *Urmancheev v. United States*, No. 22-CV-1039 JLS (MMP), 2025 WL 3124128, at *6 (S.D. Cal. Nov. 6, 2025) (similar).

Fourth, Plaintiff faults Defendant for not presenting any evidence of non-receipt, (Doc. 20 at 15–17), an argument that is based on several fundamental legal errors. For one, Plaintiff cites many California state court cases, which are irrelevant when deciding the *procedural* aspects of FTCA cases. For another, none of the Ninth Circuit cases cited by Plaintiff are related to the FTCA. (Doc. 20 at 16–17.)[4] Again, within the Ninth Circuit, it is the FTCA "Plaintiff's burden to show h[er] claim was received by the proper agency." *Urmancheev*, 2025 WL 3124128, at *6 (citations omitted); *see Whitaker v. United States*, 23 F. App'x 680, 681 (9th Cir. 2001). Furthermore, "[t]he Ninth Circuit has held that a plaintiff's evidence that he *submitted* an administrative claim [is] not sufficient to overcome the agency's showing that it did not receive the claim. Instead, the plaintiff [is] required to prove by a preponderance of the evidence that [the federal agency has] actually *received* it." *Rogers v. United States Postal Off.*, No. 24-cv-09519-HSG, 2025 WL 1810291, at *3 n.5 (N.D. Cal. July 1, 2025) (citing *Vacek*, 447 F.3d at 1252; 28 C.F.R. § 14.2; and *Bailey*, 642 F.2d at 346–47) (emphases in original). Because, as in *Vacek*, there is little more than "competing statements from the government and the claimant regarding receipt of a claim form, the government wins the jurisdictional contest." *See O'Beirn v. United States Dep't of Veterans Affs.*, No. C07-805RAJ, 2008 WL 11343103, at *3 (W.D. Wash. Apr. 15, 2008).

Finally, and tellingly, Plaintiff appears to concede that the mailbox rule does not apply to the FTCA:

> Most troubling in all of this is that the "mailbox rule" applies to most claim forms sent in Federal Court. However, for the Tort Claims Act, this rule does not apply, and there is absolutely no warning to the claimant that the presumption of receipt does not apply once the claim form is mailed. Instead, claimants need to be well-versed in the

---

[4] Some of the cases cited by Plaintiff are plainly irrelevant to the instant action. For example, Plaintiff cites this Court's decision in *Chevron Env't Mgmt. Co. v. Env't Prot. Corp.*, 335 F.R.D. 316, 325 (E.D. Cal. 2020), aff'd, No. 20-16206, 2022 WL 10966098 (9th Cir. Oct. 19, 2022), which contains a quotation to the Ninth Circuit's opinion in *Huizar v. Carey*, 273 F.3d 1220, 1223 n.3 (9th Cir. 2001), which Plaintiff relies on. The latter, however, discusses the "prison mailbox rule" in the context of a state prison. Likewise, *Ashe v. Saul*, 983 F.3d 1104 (9th Cir. 2020) is about an individual objecting to an ALJ's denial of Social Security Insurance benefits.

existing case law to know about this pitfall. (Doc. 20 at 19.) Yet, counsel for Plaintiff still presented the Court with pages of arguments that have been clearly rejected by courts within the Ninth Circuit. (*See* Doc. 20 at 15–17.)

For the foregoing reasons, the Court finds by Plaintiff has failed to establish that she has "presented" a claim to HHS under *Vacek* and progeny.

**B. Equitable Tolling**

Plaintiff argues alternatively that, "[e]ven if the Claim Form were never received," she is nonetheless entitled to equitable tolling. (Doc. 20 at 18–20.) However, because Plaintiff has failed to establish that the Claim Form allegedly mailed on July 22, 2024 was received by HHS, Plaintiff cannot satisfy the presentation requirement under § 2675(a) unless she sends in a second Claim Form which is received by HHS. Consequently, even if the Court agrees with Plaintiff on the issue of equitable tolling, it does not change the fact that Plaintiff has failed to satisfy the presentation requirement.

In any case, the Court does not find that Plaintiff has "establish[ed] (1) that [s]he has been pursuing h[er] rights diligently, and (2) that some extraordinary circumstances stood in h[er] way. The first element requires the effort that a reasonable person might be expected to deliver under his or her circumstances and asks whether the plaintiff was without any fault in pursuing h[er] claim. The second element requires the litigant to show that extraordinary circumstances were the cause of h[er] untimeliness and . . . made it impossible to file the document on time." *Booth v. United States*, 914 F.3d 1199, 1207 (9th Cir. 2019) (internal citations and quotation marks omitted) (final alteration in original).[5] With respect to the first element, the Court finds the following factors weigh against a finding of reasonable diligence.

First, Plaintiff knew of possible federal involvement on January 10, 2024, which was more than a year before the deadline to file a claim. (Doc. 21 at 10.) Yet, counsel for Plaintiff did not mail a claim until July 22, 2024. (Doc. 20 at 7.)

---

[5] Plaintiff's argument that "equitable tolling applies due to Plaintiff's minor status," (Doc. 20 at 13, 19), is without merit, for the Ninth Circuit has expressly held that there is no minority tolling under the FTCA. *Booth*, 914 F.3d at 1205–06 ("The parent's knowledge of the injury and its cause is imputed to the minor, leaving the parent responsible for initiation of suit in a timely manner." (citation omitted)).

Second, Plaintiff alleges that the Claim Form was mailed on July 22, 2024, (Doc. 20 at 7), eight months before the March 28, 2025 deadline, (*see* Doc. 21 at 10). A reasonably diligent counsel may have followed up with HHS if he did not receive *any* response within the eight months after his staff allegedly mailing out Form 95. *See Vacek*, 447 F.3d at 1252–53 ("Furthermore, the administrative exhaustion requirement is satisfied if the administrative agency fails to make final disposition of a claim within six months. If [the plaintiff]'s attorney had contacted the USPS six months after he first mailed the form rather than waiting for over a year, he still would have been within the statute of limitations and could have filed the claim anew." (citing 28 U.S.C. § 2675(a)). Stated differently, a reasonably diligent counsel may be expected to follow up with HHS after eight months of radio silence.

Third, Plaintiff complains that "there is absolutely no warning to the claimant that the presumption of receipt does not apply once the claim form is mailed." (Doc. 20 at 19.) Plaintiff seems to argue that this is "a trap for the unwary[,]" and that it would be unfair to expect her to be "well-versed in the existing case law to know about this pitfall." (*Id*.) The Court may be more sympathetic to this argument if Plaintiff were proceeding pro se. However, a reasonably diligent attorney may be expected to check the relevant case law, especially circuit-level decisions. Indeed, it is undisputed that the counsel for Plaintiff, Mr. Koorosh K. Shahrokh, is licensed in California and has "prior experience handling federal claims and the FTCA." (Doc. 20 at 6.) A reasonably competent attorney in his shoes should know—or at least should know the need to learn—the relevant Ninth Circuit precedents on the FTCA.

As to the second element, Plaintiff provides no obvious indication of "extraordinary circumstances," which caused the untimeliness and which made it "impossible to file" on time. As Defendant points out, (Doc. 16-1 at 12), the Ninth Circuit has repeatedly explained that "run-of-the-mill mistakes by one's lawyer" are "too routine and unremarkable" to warrant equitable relief, unless Plaintiff counsel's mistakes or omissions transcend "garden variety negligence and enter the realm of 'professional misconduct.'" *Luna v. Kernan*, 784 F.3d 640, 646 (9th Cir. 2015). At most, the mistakes and omissions here amount to ordinary negligence or malpractice, not "professional misconduct."

## IV.    LEAVE TO AMEND

"In general, the FTCA's exhaustion requirement demands that a plaintiff exhaust his administrative remedies *before* he files an FTCA claim in federal court." *D.L. by & through Junio v. Vassilev*, 858 F.3d 1242, 1245 (9th Cir. 2017) (citation omitted) (emphasis added). As the Supreme Court explained in *McNeil v. United States*, a prematurely filed FTCA lawsuit must be dismissed even if the plaintiff ultimately exhausts his administrative remedies before "substantial progress" has occurred in the case. 508 U.S. 106, 110 (1993).

Here, as in *O'Shaughnessy v. United States*, "Plaintiff[] asserted an FTCA claim and named the United States as a Defendant in the original Complaint and in the FAC." No. 2:20-CV-268-WQH-EJY, 2022 WL 1265849, at *3 (D. Nev. Apr. 28, 2022). "This case falls within the general rule that a premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit." *See id*. (cleaned up). As this Court clearly explained more than three decades ago:

> If the claimant is permitted to bring suit prematurely and simply amend his complaint after denial of the administrative claim, the exhaustion requirement would be rendered meaningless. Because § 2675(a) of the FTCA requires that an administrative claim be finalized at the time the complaint is filed, plaintiff's complaint cannot be cured through amendment, but instead, plaintiff must file a new suit. This Court lacks subject matter jurisdiction over the present action, which was commenced before the exhaustion requirement under § 2675(a) was satisfied.

*Sparrow v. U.S. Postal Serv.*, 825 F. Supp. 252, 255 (E.D. Cal. 1993), *quoted in Galvan v. Brock*, No. 1:11-cv-02079 AWI, 2012 WL 4863068, at *4 (E.D. Cal. Oct. 11, 2012). As such, the Court must dismiss the FAC without leave to amend; however, the dismissal shall be without prejudice. *See Miller v. Mayers Mem'l Hosp.*, No. 2:09-cv-01687 MCE KJM, 2009 WL 3048690, at *2–3 (E.D. Cal. Sept. 18, 2009) (ordering similar disposition); *see also Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 655–56 (9th Cir. 2017) (addressing dismissal without leave to amend and dismissal with prejudice as two separate issues).

## V.    CONCLUSION

Based upon the foregoing, the Court **ORDERS**:

(1) The First Amended Complaint is **DISMISSED WITHOUT LEAVE TO AMEND**

and **WITHOUT PREJUDICE**.

(2) The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

Dated: __**May 4, 2026**__

UNITED STATES DISTRICT JUDGE

16